**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CHRISTOPHER SHARP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 1:11-cv-02888-BEL |
| | ) | |
| BALTIMORE CITY POLICE | ) | |
| DEPARTMENT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**STATEMENT OF INTEREST OF THE UNITED STATES**

This litigation presents constitutional questions of great moment in this digital age:  whether private citizens have a First Amendment right to record police officers in the public discharge of their duties, and whether officers violate citizens' Fourth and Fourteenth Amendment rights when they seize and destroy such recordings without a warrant or due process.  The United States urges this Court to answer both of those questions in the affirmative.  The right to record police officers while performing duties in a public place, as well as the right to be protected from the warrantless seizure and destruction of those recordings, are not only required by the Constitution.  They are consistent with our fundamental notions of liberty, promote the accountability of our governmental officers, and instill public confidence in the police officers who serve us daily.

The United States is charged with enforcing three civil federal civil rights statutes that prohibit state and local law enforcement agencies from engaging in conduct that deprives persons of their rights under the Constitution and laws of the United States.  One of the provisions that the United States enforces is the police misconduct provision of the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141, which authorizes the Attorney General to file lawsuits seeking court orders to

reform police departments engaging in a pattern or practice of violating citizens' federal rights. The United States also enforces the anti-discrimination provisions of the Omnibus Crime Control and Safe Streets Act of 1968 and Title VI of the Civil Rights Act of 1964. Together, these three provisions prohibit discrimination on the basis of race, color, sex, or national origin by police departments receiving federal funds. Because of these enforcement responsibilities, the United States has a strong interest in ensuring that citizens' rights under the First, Fourth, and Fourteenth Amendments are not diminished when they record police carrying out their duties in a public setting. Accordingly, the United States files this Statement of Interest pursuant to 28 U.S.C. § 517.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 15, 2010, while in the Clubhouse at the Pimlico Race Course, Plaintiff Christopher Sharp observed Baltimore City Police Department ("BPD") officers forcibly arresting his friend.[1] Compl. at 9, ECF. No. 2. Mr. Sharp used his cell phone camera to video and audio record the officers' conduct. *Id*. at 2. Several officers, in succession, approached Mr. Sharp and ordered him to surrender his camera phone. *Id*. at 10. After twice refusing to comply with officers' demands, Mr. Sharp surrendered his phone to an officer who indicated that he needed to review and possibly copy Mr. Sharp's recording as evidence. *Id*. This officer left the Clubhouse with Mr. Sharp's phone. *Id*. at

---

[1] The United States assumes the facts presented in the Plaintiff's Complaint are true for the purposes of this Statement of Interest. *See Ashcroft v. Iqbal*, 556 U.S. 662, ---, 129 S. Ct. 1937, 1950 (2009). Although not included in the Complaint, Defendants' Motion to Dismiss Complaint or for Summary Judgment indicates that Mr. Sharp's friend was arrested for "striking a citizen in the presence of a police officer, resisting arrest, [and] assault second degree-law enforcement." *See* Def. Motion to Dismiss Complaint or for Summary Judgment at 2 & n.1, ECF. No. 20.

11.  When the officer returned with Mr. Sharp's cell phone, he ordered Mr. Sharp to leave the premises. *Id.* As Mr. Sharp left the Clubhouse, he discovered that officers had deleted all of the recordings on his cell phone, including the two recordings of his friend's arrest and at least twenty personal videos.  *Id.* at 12.  The personal videos included recordings of his young son at sports events and parties and other videos of great sentimental value.  *Id.*  Mr. Sharp's cell phone had also been reset so that it only permitted emergency calls.  *Id.*

BPD initiated a roll call training on August 17, 2011, that informed BPD officers that "[i]t is lawful for a person to videotape activities by a law enforcement officer in a public place and in the course of a law enforcement officer's regular duty."  *See* Def. Motion to Dismiss Complaint or for Summary Judgment ("Def. MTD") at 12, ECF. No. 20.[2]  The training does not reference the First, Fourth, or Fourteenth Amendments.  *See id.* at 12-15.  In addition, BPD transmitted an electronic message department-wide regarding the Maryland Wiretapping Act;  provided an additional training to sergeants; and promulgated a new General Order that "instructs all sworn members on the Departments' protocol for addressing the video recording police activity and/or the video recording of a suspected crime." Def. MTD Ex. 2 at 2.

On August 31, 2011, Mr. Sharp filed a Complaint in the Circuit Court for Baltimore City against BPD, Frederick H. Bealefeld, III, Commissioner of the Baltimore City Police Department, and Unknown Police Officers Nos. 1, 2, and 3, alleging violations of state law and rights protected by the First, Fourth, and Fourteenth Amendments to the U.S. Constitution.  On October 11, 2011, the case was removed to the United States District Court for the District of Maryland.  On November 30, 2011, BPD

---

[2] Although the parties have yet to engage in discovery to test the factual averments in Defendants' Motion to Dismiss Complaint or for Summary Judgment, the United States assumes the truth of Defendants' factual allegations for the purposes of this Statement of Interest.  As explained infra, even assuming Defendants' factual averments are correct, this Court should not grant summary judgment.

and Frederick H. Bealefeld, III ("Defendants") filed a Motion to Dismiss Complaint or for Summary

Judgment pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure.


## ARGUMENT

The First, Fourth, and Fourteenth Amendments protect Mr. Sharp from the actions taken by BPD

officers in response to Mr. Sharp's recording of their actions, at least on the facts alleged in the

Complaint.  Indeed, Defendants recognize that the First Amendment is implicated when a private citizen

records officers in the public discharge of their duties, and they have begun to take steps to ensure that

the First Amendment is upheld.  Unfortunately, Defendants' remedial actions to date are insufficient to

ensure that a violation of the First Amendment does not recur, nor have Defendants taken any remedial

actions regarding the alleged violations of the Fourth and Fourteenth Amendments.  Accordingly,

Defendants' request for partial summary judgment should be denied.[3]

1.     **The First Amendment Protects the Recording of Police Officers Performing Their Duties in Public**

         a.   **Defendants Concede That Private Citizens May Record Public Police Activities**

The First Amendment protects the rights of private citizens to record police officers during the

public discharge of their duties.  Mr. Sharp's recording of his friend's arrest by BPD officers is

---

[3] In their Motion to Dismiss, Defendants make two arguments:  (1) Plaintiff failed to state a claim
against BPD or the Commissioner because the Complaint does not include sufficient facts to establish
municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); and (2) Plaintiff's claims
are moot because there is no reasonable expectation that the violations alleged by Plaintiff will reoccur.
Defendants' first argument is based on alleged factual and pleading deficiencies that do not implicate the
United States' interests.  Defendants's second argument, however, assumes *arguendo* that Defendants
could be held liable for the actions of the individual police officers and asserts that Plaintiff's claims are
nevertheless moot because of the remedial actions Defendants have taken.  In addressing Defendants'
second argument, the United States also assumes *arguendo* that Defendants could be held liable under
*Monell*.  As argued below, Defendants' remedial actions actions are insufficient to moot Plaintiffs'
claims.

unquestionably protected by the First Amendment, and Defendants concede this point.  *See* Def. MTD at 12-15.  Federal courts have recognized that recording devices are a form of speech through which private citizens may gather and disseminate information of public concern, including the conduct of law enforcement officers.  The First Circuit recently held in *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011), that "[b]asic First Amendment principles" and federal case law "unambiguously" establish that private citizens possess "a constitutionally protected right to videotape police carrying out their duties."  *Id.* at 82.  *See Smith v. Cumming*, 212 F.3d 1332,  1333 (11th Cir. 2000) (recognizing the "First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct."); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (recognizing the "First Amendment right to film matters of public interest"); *Robinson v. Fetterman*, 378 F. Supp. 2d 534, 542 (E.D. Pa. 2005) (finding "no doubt that the free speech clause of the Constitution protected" plaintiff who videotaped officers because  "[v]ideotaping is a legitimate means of gathering information for public dissemination and can often provide cogent evidence").  The right to record police activity is limited only by "reasonable time, place, and manner restrictions."  *Glik*, 655 F.3d at 84; *see Kelly v. Borough of Carlisle*, 622 F.3d 248, 262 (3d Cir. 2010) (noting "even insofar as it *is* clearly established, the right to record matters of public concern is not absolute; it is subject to reasonable time, place, and manner restrictions," and finding "insufficient case law to establish a right to videotape police officers during a traffic stop," an "inherently dangerous situation[ ]").

There is no binding precedent to the contrary.  In *Szymecki v. Houck*, 353 F. App'x 852 (4th Cir. 2009), the Fourth Circuit issued a one page, unpublished per curium opinion summarily concluding – without providing legal or factual support – that the "right to record police activities on public property was not clearly established in this circuit at the time of the alleged conduct."  *Id.* at 853.  The Fourth

Circuit's opinion in *Szymecki* is not a barrier to this Court making a reasoned judgment based on

established constitutional principles. *See United States v. Stewart*, 595 F.3d 197, 199 n.1 (4th Cir.

2010) ("Unpublished opinions have no precedential value in our Circuit."); *see also Glik*, 655 F.3d at 85

("[T]he absence of substantive discussion deprives *Szymecki* of any marginal persuasive value it might

otherwise have had.").

 Furthermore, the facts alleged here indicate that BPD officers confronted Mr. Sharp because he

was taking video and audio recordings of his friend's arrest, ordered him to surrender his camera phone,

and ultimately destroyed the recordings on Mr. Sharp's phone because the BPD officers did not want the

recordings to be used to impugn their actions. "There is no question that speech critical of the exercise

of the State's power lies at the very center of the First Amendment." *Gentile v. State Bar of Nev.*, 501

U.S. 1030, 1034 (1991). The reach of the First Amendment's protection extends beyond the right to

gather such information – it also prohibits government officials from "punish[ing] the dissemination of

information relating to alleged governmental misconduct." *Id*. at 1035; *see Butterworth v. Smith,* 494

U.S. 624, 632 (1990) (speech relating to alleged governmental misconduct "has traditionally been

recognized as lying at the core of the First Amendment").

 The right to engage in and disseminate speech relating to government misconduct is not

diminished when the government actors are police officers. *See City of Houston, Tex. v. Hill*, 482 U.S.

451, 461 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and

challenge directed at police officers."); *Norwell v. City of Cincinnati, Ohio*, 414 U.S. 14, 16 (1973)

("Surely, one is not to be punished for nonprovocatively voicing his objection to what he obviously felt

was a highly questionable detention by a police officer."); *see also Jean v. Mass. State Police*, 492 F.3d

24, 30 (1st Cir. 2007) (finding that activist's recording of police officers' "warrantless and potentially

unlawful search of a private residence is a matter of public concern"); *Wilson v. Kittoe*, 337 F.3d 392, 399 n.3 (4th Cir. 2003) ("Peaceful verbal criticism of an officer who is making an arrest cannot be targeted under a general obstruction of justice statute such as Virginia's without running afoul of the First Amendment . . . .").

The Fourth Circuit has explicitly held that suppressing information critical of the police violates the First Amendment.  In *Rossignol v. Voorhaar*, 316 F.3d 516, 521 (4th Cir. 2003), the Fourth Circuit considered whether sheriff's deputies violated the First, Fourth, and Fourteenth Amendments when they suppressed the distribution of a newspaper critical of the Sheriff and his deputies.  The Court held that "the seizure clearly contravened the most elemental tenets of First Amendment law." *Id.* at  521.  When law enforcement officers target materials "for suppression and retaliation because they disagree[] with its viewpoint and intend[] to prevent its message from being disseminated," "[t]his by itself [i]s sufficient to violate the Constitution." *Id*.  Moreover, by suppressing constitutionally protected speech, law enforcement officers violated "*both* a speaker's right to communicate information and ideas to a broad audience *and* the intended recipients' right to receive that information and those ideas." *Id.* at 522.  The same principles apply here.  If, as Mr. Sharp alleges, BPD officers suppressed the dissemination of his recording of his friend's arrest, such an action would clearly violate the First Amendment.

**b.  Defendants' Remedial Actions Are Not Sufficient To Prevent Future Constitutional Violations**

Defendants do not dispute that the First Amendment protects Mr. Sharp's recording of his friend's arrest.  *See* Def. MTD at 12-15.  Nor do Defendants address, and presumably therefore do not dispute, Mr. Sharp's First Amendment right to disseminate this recording.  Instead, Defendants argue

that they have taken sufficient steps to address the alleged violation of the First Amendment, rendering Mr. Sharp's claims moot.  *See id.*

Specifically, Defendants allege that, BPD has voluntarily developed training protocols for its officers and sergeants and promulgated a new policy in order to clarify the rights of individuals who engage in protected First Amendment activities.  *See* Def. MTD at 12-13.  Defendants contend that these steps are sufficient to establish that Mr. Sharp's First Amendment claims for injunctive relief are now moot.[4]  While the United States appreciates that Defendants now recognize that measures should be taken to address the alleged First Amendment violations, the remedial actions taken thus far – BPD's promulgation of a new General Order and provision of training – are not sufficient to prevent future constitutional violations.

Federal courts have a "duty . . . to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption."  *United States v. Or. State Med. Soc'y*, 343 U.S. 326, 333 (1952).  Under such circumstances, "[a] controversy may remain to be settled" yet "[t]he defendant is free to return to his old ways."  *United States v. W. T. Grant Co.*, 345 U.S. 629, 632-33 (1953).  Consistent with this principle, "[a] defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000); *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001) (This "general rule . . . traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior.").  In order to overcome the general rule, a

---

[4] Defendants also appear to claim that Mr. Sharp's Fourth and Fourteenth Amendment claims are now moot, *see* Def. MTD at 13, although they do not address either of these claims substantively in their Motion.  *See* infra Note 6.

defendant must establish that – due to his voluntary cessation of the challenged conduct – "there is no reasonable expectation that the wrong will be repeated." *W. T. Grant Co.*, 345 U.S. at 632-33.

Although Defendants have taken some remedial actions, these measures do not adequately ensure that violations will not recur. *See Friends of the Earth, Inc.*, 528 U.S. at 193 (Defendants have the "formidable burden" of establishing that it's "absolutely clear" that their voluntary actions can reasonably be expected to prevent future constitutional violations."). In the months following the initiation of Mr. Sharp's civil suit, Defendants developed and implemented a roll call training, transmitted an electronic message on the same topic, and provided an additional training to sergeants. Def. MTD at 5-6. These training documents, however, do not explicitly acknowledge that private citizens' right to record the police derives from the First Amendment, nor do they provide clear and effective guidance to officers about the important First Amendment principles involved.[5] *See* Def. MTD at 12 (referring to roll call training on "Wire Tapping Law," an electronic message "on the same topic," training for sergeants on "the scope of the Maryland Wiretapping Act" and "an explanation of the right of citizens to record public police activities"); Def. MTD, Ex. 2-4. Defendants also place great emphasis on their recently promulgated General Order as evidence supporting their Motion to Dismiss, but the General Order was not attached to their Motion. Instead, Defendants ask this Court to conclude that BPD's General Order is sufficient to prevent future constitutional violations based on Defendants' assurances alone. As it currently stands, "nothing in the record indicates that Defendants' actions have resulted in permanent changes," prohibiting a finding that Mr. Sharp's claims for injunctive relief are

---

[5] Significantly, the training materials also make no reference to the Fourth or Fourteenth Amendments, so it is unclear how these materials could possibly moot Mr. Sharp's claims on these issues.

moot.  *Feldman v. Pro Football, Inc.*, 579 F. Supp. 2d 697, 706 (D. Md. 2008) (finding Plaintiff's claims

not moot because "there is nothing to prevent Defendants from returning to their prior practices").

In short, the First Amendment issues presented in this case are significant and are not adequately

addressed by training that does not specifically describe officers' duties under the First Amendment.  If

BPD maintains a policy, practice or custom of advising officers to detain citizens who record the police

while in the public discharge of their duties and to seize, search, and delete citizens' recordings as

Plaintiff's contend, Compl. at 7, the remedial measures taken by the Defendants are not sufficient to

prevent future constitutional violations.  At minimum, Defendants should develop a comprehensive

policy that specifically addresses individual's First Amendment right to observe and record officer

conduct.  This policy should be implemented through periodic training, and the effectiveness of the

policy and training should be tested routinely through quality assurance mechanisms.  Moreover, BPD

should track allegations that an officer has interfered with a citizen's First Amendment right to observe

and/or record the public performance of police duties.  While Defendants have taken some measures to

address Plaintiff's allegations, those measures do not demonstrate that First Amendment violations

could not recur, and therefore summary judgment is inappropriate.

2.      **The Fourth Amendment Protects Private Property From Seizure or Search Without a
        Warrant or Probable Cause**

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses,

papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.[6]  The Fourth

---

[6] While Defendants purport to have resolved Mr. Sharp's First Amendment claims through the provision
of training and the development of a new General Order, Defendants' position on Mr. Sharp's Fourth
and Fourteenth Amendment claims is less clear.  To the extent the Defendants argue that their voluntary
actions to prevent officers from retaliating against persons engaged in activity protected by the First
Amendment also moots Mr. Sharp's Fourth and Fourteenth Amendment claims, Defendants fail to
recognize the independent import of these claims.  The Supreme Court "has never held that one specific

Amendment "traditionally has been deemed to protect" private citizens' "personal effect[s]." *Soldal*, 506 U.S. at 65 (*citing Cardwell v. Lewis*, 417 U.S. 583, 591 (1974)); *Altman v. City of High Point, N.C.*, 330 F.3d 194, 202 (4th Cir. 2003) ("[T]he [Supreme] Court has treated the term 'effects' as being synonymous with personal property."). The interests animating the Fourth Amendment's prohibition against unreasonable searches and seizures are heightened when the property at issue is also protected by the First Amendment. The Supreme Court has held that Fourth Amendment limitations on law enforcement officers' authority to seize individuals' property must be "scrupulously observed" when the item seized contains information protected by the First Amendment and "the basis for the seizure is disapproval of the message contained therein." *Walter v. United States*, 447 U.S. 649, 655 (1980). This requirement that government officials closely adhere to the strictures of the warrant requirement when the item to be seized is protected by the First Amendment recognizes that the "[t]he Bill of Rights was fashioned against the background of knowledge that unrestricted power of search and seizure could also be an instrument for stifling liberty of expression." *Walter*, 447 U.S. at 655 n.6; *see also New York v. P.J. Video, Inc.*, 475 U.S. 868, 873 (1986) ("We have long recognized that the seizure of films or books on the basis of their content implicates First Amendment concerns not raised by other kinds of seizures.").

Indeed, the seizure of material protected by the First Amendment is a form of prior restraint – a long disfavored practice only permitted in limited circumstances not present here. The Supreme Court has recognized that "seizing films to destroy them or to block their distribution or exhibition is a very

---

constitutional clause gives way to another equally specific clause when their domains overlap." *Presley v. City of Charlottesville*, 464 F.3d 480, 485 (4th Cir. 2006); *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 70 (1992) ("Certain wrongs affect more than a single right . . . [w]here such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character. Rather, we examine each constitutional provision in turn.").

different matter from seizing a single copy of a film for the bona fide purpose of preserving it as

evidence in a criminal proceeding." *Heller v. New York*, 413 U.S. 483, 490 (1973).  When material falls

"arguably within First Amendment protection," and officers' warrantless seizure of that material

"br[ings] to an abrupt halt an orderly and presumptively legitimate distribution or exhibition" of that

material, the Fourth Amendment is violated.  *Roaden v. Kentucky*, 413 U.S. 496, 503 (1973) ("Such

precipitate action by a police officer, without the authority of a constitutionally sufficient warrant, is

plainly a form of prior restraint and is, in those circumstances, unreasonable under Fourth Amendment

standards.").  Such a seizure, which prohibits the dissemination of constitutionally protected information

"presents essentially the same restraint on expression as the seizure of all the books in a bookstore." *Id.*

at 504.  As described above, Defendants' seizure and destruction of Mr. Sharp's videos appears to have

been based on the content of those videos and prevented their dissemination.  These First Amendment

concerns "require[] that the Fourth Amendment be applied with 'scrupulous exactitude.'" *Maryland v.*

*Macon*, 472 U.S. 463, 468 (1985).

    In this case, Mr. Sharp alleges that Defendants seized his cell phone and searched it without a

warrant.  An officer's warrantless search or seizure of a private citizen's personal property is per se

unreasonable unless the search or seizure "falls within 'certain carefully defined classes of cases' that

permit warrantless searches." *United States v. Perez*, 393 F.3d 457, 460 (4th Cir. 2004) (*citing Camara*

*v. Municipal Court of San Francisco*, 387 U.S. 523, 528-29 (1967)); *Altman*, 330 F.3d at 205  ("A

seizure of personal property conducted without a warrant is presumptively unreasonable.").  Warrantless

seizures are only permitted if an officer has probable cause to believe that the property "holds

contraband or evidence of a crime" and "the exigencies of the circumstances demand it or some other

recognized exception to the warrant requirement is present."[7]  *United States v. Place*, 462 U.S. 696, 701

(1983).  Even then, officers may not search the property without first obtaining a warrant.  *Id*. at 701 &

n.3.  In determining whether the seizure and search were reasonable under the circumstances, courts

"balance the nature and quality of the intrusion on the individual's Fourth Amendment interest against

the importance of the governmental interests alleged to justify the intrusion," to determine if an officer's

conduct violated the Fourth Amendment.  *Perez*, 393 F.3d at 460 (*citing Place*, 462 U.S. at 703).

It is well established that individuals have a property interest in their cell phones that is protected

by the Fourth Amendment.  A government official's intrusion into a private citizen's personal effects

constitutes a Fourth Amendment seizure if the individual has a "possessory interest" in the property and

the official engages in "some meaningful interference" with that interest.  *United States v. Jacobsen*, 466

U.S. 109, 113 (1984).  Similarly, a government official's search of property violates the Fourth

Amendment if officials infringe upon an "an expectation of privacy that society is prepared to consider

reasonable."  *Id*.  Private citizens have both a possessory interest in their cell phones and a recognized

expectation of privacy in the contents of their cell phones.  *See United States v. Finley*, 477 F.3d 250,

259-60 (5th Cir. 2007) (recognizing defendants' possessory interest in seized cell phone and privacy

interest in text messages and call records, but finding search permissible as search incident to arrest);

---

[7] The exception for warrantless searches incident to an arrest does not apply in this case.  Courts have recognized that it may be necessary for a law enforcement officer to conduct a warrantless search of the contents of a suspect's cell phone incident to a lawful arrest if the phone contains evidence that may otherwise be destroyed.  *See, e.g*., *United States v. Murphy*, 552 F.3d 405, 411 (4th Cir. 2009) ("[O]fficers may retrieve text messages and other information from cell phones and pagers seized incident to an arrest" where there is a "manifest need . . . to preserve evidence.").  The "search incident to arrest" exception to the warrant requirement "has been traditionally justified by the need to search for weapons, instruments of escape, and evidence of crime."  *United States v. Reid*, 929 F.2d 990, 994 (4th Cir. 1991); *see also Knowles v. Iowa*, 525 U.S. 113, 116 (1998).  The parties agree that Mr. Sharp was not arrested and that officers destroyed Mr. Sharp's recordings instead of copying them as evidence for a criminal prosecution.

*United States v. Young*, 278 F. App'x 242, 245-46 (4th Cir. 2008) (per curiam) (recognizing defendant's "[p]rivacy rights in the phone" from which officer retrieved text messages); *United States v. Wurie*, 612 F. Supp. 2d 104, 109 (D. Mass. 2009) ("It seems indisputable that a person has a subjective expectation of privacy in the contents of his or her cell phone."). An individual's personal cell phone "contain[s] a wealth of private information, including emails, text messages, call histories, address books, and subscriber numbers" and is akin to "a personal computer that is carried on one's person." *United States v. Zavala*, 541 F.3d 562, 577 (5th Cir. 2008) (finding that defendant "had a reasonable expectation of privacy regarding this information"). Accordingly, Mr. Sharp has a protectable interest in his cell phone and its contents under the Fourth Amendment.

In this case, the Complaint does not include any allegations indicating that exigent circumstances existed that would permit the BPD officers to seize Mr. Sharp's phone without a warrant, and Defendants have not suggested that any existed in their Motion. *See Place*, 462 U.S. at 701. Moreoever, it is unclear whether, when Mr. Sharp surrendered his phone to officers, he did so "voluntarily" and not as "the result of duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973); *United States v. Hylton*, 349 F.3d 781, 785 (4th Cir. 2003) (An individual's "valid consent" is "[o]ne well-recognized exception" to the warrant requirement). *See* Def. MTD at 5. Nor is it clear whether Mr. Sharp voluntarily consented to a search of his phone's contents. These ambiguities alone suggest that this case is inappropriate for summary judgment.

Even if Mr. Sharp did consent to the surrender of his phone and some type of search of its contents, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable searches.'" *Jacobsen*, 466 U.S. at 124. Law enforcement officers violate

14

the Fourth Amendment if their search exceeds the scope of a person's consent.  *See United States v.*

*Neely*, 564 F.3d 346, 353 (4th Cir. 2009) ("Because Officer Tran's search exceeded the scope of Neely's

consent and cannot be justified under *Terry,* we find that the search of the interior of Neely's car was in

violation of his Fourth Amendment rights.").  Federal courts have recognized the uncontroversial

principle that, by consenting to an initial search of private property, private citizens do not thereby

consent to the destruction of that property.  *See, e.g.*, *United States v. Strickland*, 902 F.2d 937, 941-42

(11th Cir. 1990) (explaining that the scope of a search pursuant to a general statement of consent "is not

limitless" and that "a police officer could not reasonably interpret a general statement of consent to

search an individual's vehicle to include the intentional infliction of damage to the vehicle or the

property contained within it").  Here, Defendants deleted Mr. Sharp's videos from his cell phone,

allegedly without consent.  If these allegations are true, Defendants violated Mr. Sharp's Fourth

Amendment rights.

**3.      The Fourteenth Amendment Prohibits the Seizure and Destruction of Property Without Due Process**

The Fourteenth Amendment prohibits state and local officials from depriving "any person of life,

liberty, or property, without due process of law." U.S. Const. amend. XIV.  Here, Mr. Sharp alleges that

Defendants seized and destroyed his cell phone videos without notice or an opportunity to be heard and

that this was pursuant to a policy, practice, or custom of Defendants.  Compl. at 18.  If these allegations

are accurate, BPD officers violated the Fourteenth Amendment when they deprived Mr. Sharp of

personal property without providing him with notice or an opportunity to object to the deletion of the

recordings in his cell phone, and Defendants have not put forward any evidence that they have taken

remedial measures to address this violation.

A private citizen's "constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972).  By mandating that individuals be afforded an opportunity to be heard, the due process clause "operates to protect the 'use and possession of property from arbitrary encroachment – to minimize substantively unfair or mistaken deprivations of property.'"  *See Helton v. Hunt*, 330 F.3d 242, 247 (4th Cir. 2003) (finding that statute permitting law enforcement officers to seize and destroy video gaming machines "with no process at all" violated due process) (*citing Fuentes*, 407 U.S. 67 at 81); *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause . . . .").

Mr. Sharp has alleged sufficient facts in his Complaint to suggest a violation of the Fourteenth Amendment.  A plaintiff alleging a due process violation must establish that "(1) they had property or a property interest (2) of which the defendant deprived them (3) without due process of law." *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005); *see also Zinermon v. Burch*, 494 U.S. 113, 126 (1990) ("[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate."). Private citizens have property interests in their personal effects, including cell phones and the contents of their cell phones.  *See* supra Part 2; *see also Matthias v. Bingley*, 906 F.2d 1047, 1051 (5th Cir. 1990) ("Of course, the plaintiffs' personal belongings disposed by the City in this case fall[] under the rubric 'property' governed by the Due Process Clause.").  Mr. Sharp alleges, and Defendant does not dispute, that officers permanently deleted the recordings on Mr. Sharp's cell phone – including numerous videos of his young son at sports events and other personal videos – without first providing him with "notice

reasonably calculated" to apprise him of "the pendency of the action" and "afford [him] an opportunity to present [his] objections."[8] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Such notice is "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality." *Id*.

"The right to be heard before being condemned to suffer grievous loss of any kind . . . is a principle basic to our society." *Mathews*, 424 U.S. at 333 (internal citations omitted).  BPD officers appear to have violated the core requirements of procedural due process when – without providing notice or an opportunity to be heard – they allegedly – and irrevocably – deprived Mr. Sharp of the recordings on his cell phone. *See also Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 823 (5th Cir. 2007) (The notice defendant provided to the plaintiff "was insufficient to satisfy due process because [plaintiff] did not receive the notice until after his personal property was allegedly discarded . . . . [D]iscarding [plaintiff's] personal property in this manner violated his procedural due process rights."). If the facts alleged in Mr. Sharp's Complaint are true, they make out a violation of the Fourteenth Amendment.  Defendants have not submitted any evidence suggesting that they have remedied the alleged violations, so summary judgment on this claim should be denied.

---

[8] The facts, as alleged, indicate that – *after* Plaintiff had unwittingly surrendered his phone to an officer – another officer informed him that "they'll probably just erase it and give it back."  Compl. at 11.

**CONCLUSION**

For the reasons set forth herein, the Court should deny Defendants' request for summary judgment in their Motion to Dismiss or for Summary Judgment.

Respectfully submitted,

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

JONATHAN M. SMITH
Chief
Special Litigation Section

TIMOTHY D. MYGATT
Special Counsel
Special Litigation Section

*/s/ Joshua C. Delaney*
JOSHUA C. DELANEY (Bar #024664)
RASHIDA J. OGLETREE (DC Bar #974441)
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530
Telephone:  (202) 616-2446
Facsimile:  (202) 514-0212
Email:joshua.delaney@usdoj.gov

Attorneys for the United States of America