UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 - Fax**

March 1, 2013

```
Deborah A. Jeon, Esq.
American Civil Liberties Union of Maryland Foundation
3600 Clipper Mill Road, Suite 350
Baltimore, MD 21211

Mary E. Borja, Esq.
Benjamin J. Kohr, Esq.
Craig Michael Smith, Esq.
Richard A. Simpson, Esq.
Wiley Rein LLP
1776 K. Street, N.W.
Washington, DC 20006

Mark H. Grimes, Esq.
Baltimore Police Department
Office of Legal Affairs
601 E. Fayette Street
Baltimore, MD 21202

Christopher Russell Lundy, Esq.
Daniel C. Beck, Esq.
Daniel J. Sparaco, Esq.
Baltimore City Law Department
100 N. Holliday Street, Room 101
Baltimore, MD 21202

Lindsay Cohn Cooper, Esq.
Law Department
100 N. Holliday Street, Room 106
Baltimore, MD 21201
```

1

Rashida Jamila Ogletree, Esq.
Samantha Kay Trepel, Esq.
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

    Re:   Christopher Sharp v. Baltimore City Police Department, et al, Civil No. CCB-11-2888

Dear Counsel:

This is a civil rights action under 42 U.S.C. §1983 in which plaintiff alleges that police officers seized his cell phone and deleted a video recording of a police officer arresting a woman at the Preakness Clubhouse in May 2010.

Plaintiff filed this motion to quash subpoena and for protective order, asking the Court to issue a protective order: (1) barring defendants from serving a subpoena requesting plaintiff's medical records from a 2007 hair follicle test, (2) limiting the Laurel Park subpoena to documents related to the May 2010 incident,(3) denying discovery of cell phone records, and (4) barring defendants from contacting plaintiff's family and friends.[1] Plaintiff asserts that defendants are seeking the

---

[1] Plaintiff also complains about defendant's refusal to provide his counsel with copies of documents the defendants received as a result of their apparently earlier subpoenas. (ECF No. 65, 2). There is some question as to whether the defendants complied with the notice requirements of Fed. R. Civ. P. 45(b)(1). It is not necessary to the disposition of the pending motion to resolve this. There is an absolute requirement of notification of service of subpoenas and failure to do same undermines the fair and orderly discovery process. While Fed. R. Civ. P. 45 only requires that a party provide the opposing party notice of a subpoena, not the documents themselves, see Fed. R. Civ. P. 45(b)(1), it is the better practice – indeed the professional practice – to provide copies, rather than requiring the opposing party to

2

information in an attempt to embarrass and harass him, that the information lacks relevance and that defendants' need for the information is outweighed by the harm to him.  Defendants counter that the information sought is relevant to plaintiff's competency and credibility as a witness in the case, and that plaintiff has failed to demonstrate the requisite "good cause" for the relief he seeks under the federal rules.

For the reasons set forth below, this Court GRANTS in part and DENIES in part plaintiff's motion to quash subpoena and for protective order. (ECF No. 57).

## Governing Law

Rule 26 governs the discovery sought here.  Under Rule 26(b), "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Under Rule 26(b), it is "<u>relevance</u> not <u>admissibility</u>" that drives the inquiry as to whether information is discoverable.  <u>Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab</u>., 171 F.R.D. 179, 181 (D. Md. 1997) (emphasis in original).  However, if information would be

---

issue its own subpoena, unnecessarily burdening that third party again and unnecessary putting the opposing party to expense and possible delay in the case.

inadmissible at trial, the proponent must establish that discovery of the information is reasonably calculated to lead to admissible evidence.  <u>Equal Rights Center, et al. v. Archstone-Smith Trust, et al.</u>, 251 F.R.D. 168, 170 (D. Md. 2008).  But, as the Fourth Circuit has recognized "[e]ven assuming that [] information is relevant (in the broadest sense), the simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had."  <u>Nicholas v. Wyndham Int'l, Inc</u>. 373 F.3d 537, 543 (4th Cir. 2004).

    Moreover, under Rule 26(c), the Court may issue a protective order "for good cause. . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  In order to obtain a protective order, the moving party must demonstrate "that the discovery sought lacks relevance to the extent that the likelihood and severity of the harm or injury caused. . . outweighs any need for the information." <u>Baron Fin. Corp. v. Natanzon</u>, 240 F.R.D. 200, 202 (D. Md. 2006) (citations and quotations omitted).  Indeed, "even very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it." <u>Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2036</u>.  The burden is on the movant to establish good cause under Rule 26(c); the movant must set forth specific and

4

particular facts, rather than broad conclusory statements as to why a protective order should issue. Baron Fin. Corp. v. Natanzon, 240 F.R.D. 200, 202 (D. Md. 2006).

Finally, "Rule 26(c) confers broad discretion on the trial Court to decide when a protective order is appropriate and what degree of protection is required." Baron Fin. Corp. v. Natanzon, 240 F.R.D. 200, 202 (D. Md. 2006) (citations and quotations omitted); see also Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2036 ("The rules. . . permit the broadest scope of discovery and leave it to the enlightened discretion of the district court to decide what restrictions may be necessary in a particular case.")

Using these principles as a guide, the Court shall discuss each category of the disputed discovery in turn.

## Medical Records: Hair Follicle Test

On August 1, 2012, defendants advised plaintiff of their intent to subpoena plaintiff's medical records concerning a hair follicle test ordered by the Circuit Court of Baltimore County in 2007. Plaintiff claims that this information is not relevant to the case and will not lead to admissible evidence. Additionally, plaintiff claims that defendants are seeking the information in an attempt to intimidate, harass, and embarrass plaintiff. Defendants claim that "whether or not Plaintiff is a

5

drug addict is absolutely material to his competency as a witness" and that plaintiff's "credibility, perception, and ability to remember the facts are relevant within the meaning of FRCP 26(b)(1)."

With respect to this disputed discovery, this case is similar to A Helping Hand v. Baltimore County, 295 F. Supp. 2d 585 (D. Md. 2003).  In that case, the judge issued a protective order preventing discovery of medical records of the patient's drug and alcohol treatment program because the harm caused by producing the information outweighed the need for the information.  Id. at 592-93.  The Court stated that given the sensitive nature of medical information, especially information involving drug use, "discovery involving this information is almost certain to involve 'annoyance, embarrassment, oppression, or undue burden or expense'" under FRCP 26(c).  Id. at 592.  The Court went on to state that "it is not clear that the defendants need" the medical information in order to defend the suit.  Id. at 592.  In this case, plaintiff has set out specific harms that will come of discovery into his medical records: it would cause him embarrassment; it is an attempt to pressure him to abandon his suit; and it may prevent evenhanded review of his case. Defendants fail to demonstrate that discovery of plaintiff's medical records is warranted.  Even if the hair follicle test

indicated that there were drugs in plaintiff's system in 2007 – some three years before the subject incident, the Court fails to see the relevance to the case, but certainly sees that such a request could be viewed as an attempt to intimidate.  The defendants protest that "[w]hether or not the Plaintiff is a drug addict is absolutely material to his competency as a witness." (ECF No. 63, 1).  However, defendants provide no facts supporting any impairment of plaintiff by drugs on the day of the incident, nor any authority that wide ranging discovery into a party's life and personal attributes is discoverable under Rule 26 to probe "credibility, perception and ability to remember the facts."  (ECF No. 63, 1).  The rules of discovery do not sanction a broad sweep into the lives of parties – a veritable witch hunt – in the hopes of uncovering some "dirt." "[R]elevancy under the federal rules is very broadly defined. Nonetheless, it is not unlimited, and may not unnecessarily intrude into the private matters of the parties." Avianca v. Corriea, 705 F.Supp 666, 677 (D.D.C 1989).  Plaintiff's past possible drug use is not at issue in this case.  Accordingly, discovery of these medical records is prohibited and the subpoena is quashed.

### Employment Records

On July 18, 2012, defendants served a subpoena on Laurel

7

Park race track, where plaintiff was employed until almost a year before the May 15, 2010 incident, for all records regarding plaintiff.  (ECF No. 57-4).  Plaintiff claims that this information is not relevant to the case.  Defendants claim that they are entitled to subpoena employment records.  Plaintiff recognizes that Laurel Park documents might include documents pertaining to this incident, as Laurel Park is the owner/operator of Pimlico where the incident took place.  Accordingly, there is no prohibition against defendants' discovery of Laurel Park documents relating to the incident.  However, defendants also assert a right to plaintiff's employment records because termination from a job one year prior to the incident could have a connection to the incident.  This is sheer speculation, without any basis in fact or logic.

As with the medical records subpoena, plaintiff states that concrete harms are associated with the employment records subpoenas.  It is an inquiry into his past employment that may have a chilling effect on the litigation.  Accordingly, the motion to quash the subpoena and the motion for protective order as to all Laurel Park records, except for those that relate to the incident itself, are granted.

### Cell Phone Records

On July 17, 2012, defendants served a subpoena on AT&T to

8

obtain plaintiff's cell phone records for the day before the incident to five months after the incident. Plaintiff claims that this information is not relevant to the case. The Court agrees. Defendants make no attempt to demonstrate the relevance of cell phone records before or after the incident. This is a fact-limited case, really involving plaintiff's actions over a few hours, or less, on a single day. Discovery of these cell phone records is not appropriate. Again, the defendants seem engaged in an attempt to uncover "dirt" on the plaintiff, rather than truly to investigate the facts relevant to the May 2010 incident. Accordingly, the subpoena is quashed and the motion for protective order is granted for this discovery.

While defendants boldly declare that all the above discovery sought is "absolutely relevant . . . to his claims as well as the defenses of defendants" (ECF No. 63, 3), defendants fail to demonstrate that relevance to the constitutional and tort claims before the Court (ECF No. 2) or to any asserted defenses (ECF No. 56). Similarly, the defendants declare that "[c]ase law is clear [that] credibility and ability to perceive are _always_ relevant" (ECF No. 63, 6) (emphasis added); however, the defendants cite no case for this principle. Moreover, here, none of the requested discovery bears on plaintiff's "ability to perceive" on the date in question. Thus as to all the

9

subpoenas, defendants do not set forth reasons as to why, despite the lack of any apparent relevance to the claims and potential harm associated with the subpoenas, discovery should still be had.  See Desrosiers v. MAG Indus. Automation Sys., LLC, 675 F. Supp. 2d 598, 601 (D. Md. 2009) (stating that "when challenged, threshold or apparent relevance must be established").  The Court agrees that these discovery requests (and many of the deposition questions discussed below) "have inappropriately intruded into [Mr] Sharp's personal life to root around for information that bears no relation to the issues in this case."  (ECF No. 57-1, 1).

The Court also agrees that "[d]efendants' discovery abuse is particularly egregious given the enormous power that police defendants wield over citizens, [and] their enhanced ability to track information about citizens. . ." (ECF No. 57-1, 4).

### Contacts with Family and Friends

On about July 31 and August 1, 2012, defendants contacted plaintiff's ex-wife's boyfriend and mother.  Plaintiffs claim that defendants are contacting these individuals in an attempt to encourage plaintiff to drop the lawsuit and that the contacts serve no purpose.  Defendants claim that they are entitled to contact and interview individuals who know plaintiff.  The Court appreciates why the plaintiff may find offensive police contacts

with his ex-wife's boyfriend and mother, but ordinarily the Court would not restrict such contacts.  Unlike the use of the subpoenas for the other discovery, defendants are not using the offices of the Court to gain information from these individuals. These individuals would appear, however, to have no personal knowledge relevant to the incident, although, it is possible that plaintiff shared his version of the incident with them (as he could have with any number of people).  While such inquiries could be seen as harassing and intimidating, there is no indication that the contacts themselves were aggressive, threatening or otherwise inappropriate, such as the use of informed officers for the investigation.  These individuals did not themselves complain to the Court or apparently to any other authority about the defense contacts.  However, as context for this motion and in support of the view of the intimidating and harassing approach of the defense, plaintiff's counsel attached excerpts of the deposition of the plaintiff.  (ECF No. 66, 4-32).  These deposition excerpts present a picture of  defense counsel "working plaintiff over" – asking irrelevant and personal questions about his custody arrangements for his young son (ECF No. 66, 17-19), and his divorce proceedings (ECF No. 66, 24), – among others.  Moreover, even on subjects where <u>some</u> inquiry might be permissible, defense counsel interrogated to

11

the point of harassment, such as his medical history. (ECF No. 66, 8 – et seq). It was an appalling and apparent attempt to squeeze the plaintiff with questions that would almost certainly never be permitted in Court. Counsel's questions went beyond zealous defense of his client to a not so subtle attempt to intimidate, the plaintiff. While plaintiff did not and has not sought any relief from these deposition tactics (beyond his counsel's repeated objecting in the deposition), they do support plaintiff's counsel's concern about defense's inappropriate discovery tactics. Given this, the Court questions whether in the off the record situation of witness interviews by representatives of the police department, defense counsel and his investigators would overstep the bounds of zealous defense, utilizing consciously or unconsciously the power of the police, in an inappropriate way. Accordingly, the defense is ordered to seek leave of court as to any further contacts with these or other individuals in the investigation of the case.

## Award of Expenses Under Rule 37

There was no substantial justification for defendants' position on this inappropriate discovery and an award of costs is mandated under Fed. R. Civ. P. 37. Defendants are entitled to a hearing prior to imposition of an award and the amount of same. However, the Court proposes to award the modest sum of

$1000 (certainly less than incurred in fees), without the requirements of briefing and presentation of contemporaneous billing records.  If, however, the defendants want a hearing, the Court shall provide one and shall require plaintiff's counsel's submission of a fully supported fee petition and allow defendants' opposition and critique.  Defendants shall advise the Court by March 15 as to whether they seek a hearing.  If not, the defendants shall pay the $1000 expense award by April 12, 2013 to plaintiff.

   Despite the informal nature of this ruling, it shall constitute an Order of Court, and the Clerk is directed to docket it accordingly.

                                   Sincerely yours,

                                   /s/

                                   Susan K. Gauvey
                                   United States Magistrate Judge

13