IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER SHARP,

Plaintiff,

vs.

BALTIMORE CITY POLICE
DEPARTMENT, *et al.*

Defendants.

Civil Action No. 11-cv-02888-CCB

## PLAINTIFF CHRISTOPHER SHARP'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Deborah A. Jeon (#06905)
American Civil Liberties Union of Maryland
3600 Clipper Mill Road
Suite 350
Baltimore, MD 21211
410-889-8555 (phone)
410-366-7838 (fax)

Richard A. Simpson (#14714)
Mary E. Borja (Pro Hac Vice)
Craig Smith (#17938)
Benjamin Kohr (Pro Hac Vice)
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
(202) 719-7346

August 5, 2013

*Attorneys for Plaintiff*
*Christopher Sharp*

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ...........................................................................................................1

II.     ARGUMENT..................................................................................................................2

        A.      THE POLICE DEPARTMENT'S MOTION TO DISMISS SHOULD BE
                DENIED AS A MERITLESS MOTION FOR RECONSIDERATION..................2

                1.      Applicable Standard of Review ..................................................................3

                2.      Facts Alleged in Sharp's Complaint ...........................................................3

                3.      The Police Department's Motion to Dismiss is in Substance a Meritless
                        Motion for Reconsideration. ......................................................................4

        B.      THE POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT
                SHOULD BE DENIED ON THE MERITS AND AS PREMATURE. ..................7

                1.      Summary Judgment Standard .....................................................................7

                2.      Statement of Facts in the Record. ..............................................................8

                3.      The Facts are Sufficient to Support a Finding that BPD Officers
                        Violated Sharp's Rights under the First, Fourth, and Fourteenth
                        Amendments. ..............................................................................................9

                        a.      Sharp Has Presented Sufficient Evidence that the Officers
                                Who Violated His Rights Were BPD Officers Acting in Their
                                Official Capacities, Which Is All the Evidence He Needs. ..............9

                        b.      The Police Department's Arguments that the Evidence Is
                                Insufficient to Support a Finding that the Officers Violated
                                Sharp's Rights are Meritless. ......................................................12

                        c.      The Police Department's Motion for Summary Judgment as to
                                the "Policy, Practice, or Custom" Element of Sharp's Claim
                                and the Need for Injunctive and Declaratory Relief is
                                Premature Because Sharp is Entitled to Relevant Discovery. .......14

                        d.      The Police Department's Purported Legal Defenses Are Also
                                Meritless.....................................................................................17

III.    CONCLUSION.............................................................................................................18

## TABLE OF AUTHORITIES

**Cases**                                                                                                    Page(s)

*Brown v. Prince George's County*,
   No. DCK07-2591, 2012 WL 3012573 (D. Md. July 20, 2012) ........................................10, 11

*Carey v. Piphus*,
   435 U.S. 247 (1978) ..........................................................................................................17

*Coleman v. Loudoun County School Board*,
   294 F. App'x 778 (4th Cir. 2008) .....................................................................................8

*Glik v. Cunnliffe*,
   655 F.3d 78 (1st Cir. 2011) ..............................................................................................5

*Hudson v. Palmer*,
   468 U.S. 517 (1984) ..........................................................................................................18

*International Ground Transportation, Inc. v. Mayor & City Council*,
   475 F.3d 214 (4th Cir. 2007) ............................................................................................10

*Logan v. Zimmerman Brush Co.*,
   455 U.S. 422 (1982) ..........................................................................................................18

*Lynn v. Monarch Recovery Management, Inc.*,
   No. WDQ-11-284, 2013 WL 3071334 (D. Md. June 17, 2013) ..........................................3, 7

*McLaurin v. E. Jordan Iron Works, Inc.*,
   666 F. Supp. 2d 590 (E.D.N.C. 2009), *aff'd*, 410 F. App'x 630 (4th Cir. 2011) ......................3

*Monell v. Department of Social Services*,
   436 U.S. 658 (1978) ..........................................................................................................4

*Moyle v. Anderson*,
   571 F.3d 814 (8th Cir. 2009) ............................................................................................10

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ..........................................................................................................6

*News & Observer Publishing Co. v. Raleigh-Durham Airport Authority*,
   597 F.3d 570 (4th Cir. 2010) ............................................................................................8

*Parratt v. Taylor*,
   451 U.S. 527 (1981) ..........................................................................................................18

*Ray Communications, Inc. v. Clear Channel Communications, Inc.*,
   673 F.3d 294 (4th Cir. 2012) ...................................................................................................8

*Roberts v. Prince George's County*,
   157 F. Supp. 2d 607 (D. Md. 2001) ................................................................................10, 11

*Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*,
   420 F.3d 322 (4th Cir. 2005) ...................................................................................................6

*Terry v. Ohio*,
   392 U.S. 1 (1968) ....................................................................................................................5

*Thomas v. Cook County Sheriff's Department*,
   604 F.3d 293 (7th Cir. 2009) .................................................................................................10

*United States v. Wurie*,
   No. 11-1792, 2013 WL 2129119 (1st Cir. May 17, 2013) ......................................................5

*United States v. Zavala*,
   541 F.3d 562 (5th Cir. 2008) ..................................................................................................5

*Zinermon v. Burch*,
   494 U.S. 113 (1990) ...............................................................................................................18


**STATUTES AND RULES**

42 U.S.C. § 1983 ............................................................................................................................2

Fed. R. Civ. P. 8(a) .......................................................................................................................3

Fed. R. Civ. P. 30(b) ...................................................................................................................16

# I.
## INTRODUCTION

Plaintiff Christopher Sharp respectfully submits this Opposition to the Motion to Dismiss or for Summary Judgment filed by Defendants Baltimore City Police Department ("BPD") and its Commissioner, who is sued only in his official capacity (collectively, the "Police Department").

The Police Department's current motion to dismiss is nothing more than a baseless request for reconsideration of this Court's Order (Legg, J.) denying the Police Department's prior motion to dismiss. As Judge Legg expressly held, the complaint alleges sufficient facts to state a claim for violations of Sharp's constitutional rights and also alleges sufficiently that the Police Department promulgated or was deliberately indifferent to an illegal "policy, practice, or custom" that resulted in that violation.

The Police Department's motion for summary judgment is meritless and premature. Contrary to what the Police Department argues, Sharp's testimony, combined with other evidence thus far compiled, is sufficient to create an issue of fact regarding each of the alleged violations of his constitutional rights. Moreover, Sharp has not had an opportunity to take discovery essential to his allegations about the Police Department's "policy, practice, or custom" regarding citizens' right to video police conduct in public or regarding the Police Department's contention that Sharp's claims for injunctive and declaratory relief are now moot. Indeed, here again the Police Department is in reality making a motion for reconsideration: Judge Legg specifically held that Sharp is entitled to discovery on those topics, which has not been permitted because discovery has to date been limited to attempts to identify the officers involved.

Sharp acknowledges that he has been unable to identify the officers named as John Doe defendants in the complaint. Accordingly, Sharp consents to dismissal without prejudice of his claims

against those officers in their individual capacities and to dismissal of Counts II, V, VI, VII, VIII and IX of the complaint, which are asserted against the officers only in their individual capacities. At the same time, the Police Department's lawyers do not represent the unknown officers in their individual capacities (or if they do, they have an obligation to identify them), and accordingly have no right to make arguments on the merits purportedly on their behalf. Sharp's inability to identify the specific officers who violated his rights has no impact on his claims against the Police Department, which should go forward to discovery.

## II.
## ARGUMENT

### A.   THE POLICE DEPARTMENT'S MOTION TO DISMISS SHOULD BE DENIED AS A MERITLESS MOTION FOR RECONSIDERATION.

More than a year and a half ago, the Police Department moved to dismiss Sharp's complaint, asserting that the complaint failed to state a claim upon which relief can be granted. *See* Dkt. 20., Mot. to Dismiss or for Summ. J. (Nov. 30, 2011). Taking all allegations in the complaint as true, as required in considering a motion to dismiss, this Court denied the Police Department's motion, finding that the complaint adequately alleged facts to support claims under 42 U.S.C. § 1983 against both BPD and the Commissioner[1] for multiple constitutional violations. *See* Dkt. 33, Mem. Order (Feb. 17, 2012). Sharp has not amended his complaint since the Police Department's first motion to dismiss was denied, yet the Police Department now essentially asks this Court to reconsider its ruling on the Police Department's first motion to dismiss. The Police Department advances no reason why this Court should revisit its prior ruling and its motion to dismiss must once again be denied.

---

[1] Frederick W. Bealefeld, III, served as BPD's commissioner during the May 2010 Preakness and when the Police Department first moved to dismiss Sharp's complaint. Anthony W. Batts now serves as commissioner.

1. **Applicable Standard of Review**

As this Court has already found, Sharp's complaint alleges facts sufficient to assert his

entitlement to relief. *See* Fed. R. Civ. P. 8(a) (complaints need meet only the "simplified pleading

standard" of Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the

pleader is entitled to relief"). Motions for reconsideration generally "are not appropriate vehicles to

advance arguments already rejected by the Court or new legal theories not argued before the ruling."

*McLaurin v. E. Jordan Iron Works, Inc.*, 666 F. Supp. 2d 590, 596 (E.D.N.C. 2009) (internal quotation

marks omitted), *aff'd*, 410 F. App'x 630 (4th Cir. 2011); *accord Lynn v. Monarch Recovery Mgmt., Inc.*,

No. WDQ-11-2834, 2013 WL 3071334, at *3, and n.23 (D. Md. June 17, 2013) (requiring moving

parties to show new arguments or evidence or that the court has "obviously misapprehended a party's

position or the facts or applicable law") (citing *McLaurin*, 666 F. Supp. 2d at 596). "Consequently, a

party who fails to present his strongest case in the first instance generally has no right to raise new

theories or arguments in a motion to reconsider an interlocutory order." *McLaurin*, 666 F. Supp. 2d at

596 (internal quotation omitted).

2. **Facts Alleged in Sharp's Complaint**

As alleged in the complaint, Sharp attended the 135th Preakness on May 15, 2010. *See* Dkt. 2,

Complaint ("Compl."), ¶ 25. Sharp alleged that shortly after the final race, while in the Clubhouse, he

observed a friend being forcibly arrested by uniformed BPD police officers and that he recorded video

and audio of the incident on his cell phone camera. Compl., ¶ 29.

Sharp's complaint alleged that he was then approached and surrounded by BPD officers who

demanded Sharp turn over the phone. Compl., ¶ 34-37. Sharp alleged that he only "reluctantly

surrendered" his phone after being intimidated by a "barrage of demands" and fearing arrest if continued

to refuse the officers. Compl., ¶ 37. When Sharp asked what would happen to his phone, an officer

responded that "they'll probably just erase it and give it back." Compl., ¶ 43. Eventually, Sharp's

phone was returned, but with all video recordings—including the arrest, as well as family and other

significant personal videos shot before that day—deleted. Compl., ¶¶ 46-47.

Sharp's complaint further alleged that by detaining him, seizing his cell phone, and deleting

videos on the phone, BPD officers retaliated against Sharp for exercising rights protected by the First

Amendment and also violated his rights protected by the Fourth and Fourteenth Amendments. Compl.,

¶¶ 60, 79, 89. Sharp alleged that these actions are fairly attributed to the inaction of BPD and the

Commissioner because they were aware of previous instances of misconduct, Compl., ¶ 50, failed to act

on this knowledge, Compl., ¶ 62, and are thus responsible for the constitutional violations, Compl., ¶ 49.

### 3. The Police Department's Motion to Dismiss is in Substance a Meritless Motion for Reconsideration.

The Police Department's motion to dismiss Sharp's complaint is in reality a meritless motion for

reconsideration. Judge Legg has already ruled that the complaint states a claim against the Police

Department. Dkt. 33, Mem. Order (Feb. 17, 2012). There is no reason to reconsider that decision.

To state a Section 1983 claim against the Police Department, Sharp must allege the following:

(1) BPD officers violated his constitutional rights; and (2) the Police Department promulgated or was

deliberately indifferent to an illegal policy, custom, or usage that resulted in those violations. *Monell v.

Dep't of Social Servs.*, 436 U.S. 658 (1978).

Here, Sharp has alleged facts sufficient to support claims for three violations of his constitutional

rights. First, as the Police Department has conceded, the First Amendment protects the right of citizens

to take photographs and videos of police officers performing their duties in a public place. *See* Dkt. 33

at 1 ("The parties agree that [the right of citizens to take photographs and videos in public places]

extends to photos and videos of police officers discharging their official duties . . . ."); *see also, e.g.,*

4

*Glik v. Cunnliffe*, 655 F.3d 78, 82 (1st Cir. 2011) (finding "unambiguously" established "a constitutionally protected right to videotape police carrying out their duties"). As Judge Legg held, the complaint alleges facts sufficient to state a claim that Sharp engaged in constitutionally protected activity by filming an arrest at the Preakness and that BPD officers retaliated against him for doing so by detaining him, seizing his cell phone, and destroying all of the videos on the cell phone. Dkt. 33 at 1-3. The Police Department's contrary arguments rely on facts outside the complaint and so may be considered only in connection with its summary judgment motion.

Second, the Fourth Amendment requires police to obtain a warrant before seizing or searching a cell phone, unless the owner consents or an exception to the warrant requirement applies.[2] *See Terry v. Ohio*, 392 U.S. 1, 20 (1968) ("[P]olice must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure"); *United States v. Zavala*, 541 F.3d 562, 577 (5th Cir. 2008) (explaining that a "cell phone is similar to a personal computer that is carried on one's person; . . . mere possession of a cell phone gives rise to a reasonable expectation of privacy regarding its contents"). Here, Judge Legg stated that "a factual dispute exists as to whether Sharp voluntarily surrendered his cell phone or he was coerced," and there is likewise factual dispute as to whether any exception to the warrant requirement applies—the implication being that Sharp's complaint adequately stated a claim warranting resolution of these disputes. *See* Dkt. 33 at 2. Here again, the Police Department's arguments in the current motion rely on extrinsic evidence and so must be considered only in connection with its summary judgment motion.

---

[2] The circuits have split on whether a warrant is required to search a cell phone after the phone's owner is arrested. *See United States v. Wurie*, No. 11-1792, 2013 WL 2129119, at *5 (1st Cir. May 17, 2013) (discussing the split and finding that a warrant is required). This split is specifically limited to whether warrantless cell-phone searches are permissible incident to arrest. Sharp was not arrested and therefore retained a full expectation of privacy in his cell phone. The Police Department has failed to cite any case finding that no warrant was required to search a phone without an arrest, consent, or an exception to the warrant requirement.

Third, the Fourteenth Amendment prohibits the government from depriving a citizen of property without due process of law, which generally requires notice and an opportunity to be heard. *See* Dkt. 33 at 2; *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) ("[A]t a minimum [the Due Process Clause] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."); *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005) (requiring plaintiff stating a Fourteenth Amendment claim to allege defendant deprived plaintiff of property or a property interest without due process of law). Here, Sharp alleges that the officers destroyed all of the videos on his cell phone as retaliation for Sharp's having recorded the arrest *and as a means to destroy (not preserve) evidence of the arrest.* Judge Legg's observation that the Police Department "has not asserted a legitimate reason for deleting Sharp's videos," Dkt. 33 at 2, remains true to this day. Thus, as Judge Legg previously held, Sharp has stated a claim for violation of his Fourteenth Amendment rights.

As to liability of the Police Department for the officers' violations of Sharp's constitutional rights, the complaint also plainly alleges that the Police Department "maintains a policy, practice, or custom that guides police officers who discover that their oral communications made in public regarding official business have been recorded" to "unlawfully detain the subjects, seize the devices used for recording, improperly search the phones, and delete the recordings." Compl., ¶¶ 21-22, 61, 80, 86. It also alleges specifically that the Commissioner was actually or constructively aware of this illegal policy, practice, or custom, and took no action. Compl., ¶¶ 49-50, 62, 80, 86. Finally, the complaint alleges that the officers in question acted under this policy, practice, or custom when they violated his rights. Compl., ¶ 61. As Judge Legg found, these allegations are sufficient to support a claim for entity liability and to create "a factual dispute" regarding whether the Police Department had promulgated or was deliberately indifferent to an illegal "policy, custom or usage." Dkt. 33 at 2.

In sum, nothing has changed since Judge Legg held that the complaint adequately states claims

against the Police Department based on three violations of Sharp's constitutional rights. The Police

Department cannot validly assert that this Court "misapprehended" its position, the facts, or the law, *see*

*Lynn*, 2013 WL 3071334, at *3, in denying the Police Department' first motion to dismiss. There is no

reason to reconsider Judge Legg's decision.

**B.      THE POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE
         DENIED ON THE MERITS AND AS PREMATURE.**

The Police Department's summary judgment argument that Sharp's own testimony shows that

the unknown officers did not violate his constitutional rights is patently meritless. Likewise, its

contention that Sharp's inability to identify the specific officers involved defeats liability for the Police

Department fails because there is more than sufficient evidence to support a finding that the officers

were in fact BPD officers acting as such. Accordingly, the Police Department's motion for summary

judgment on these issues should be denied on the merits.

The Police Department is not entitled to summary judgment regarding whether the officers acted

under a "policy, practice, or custom" because Sharp has not had an opportunity to take essential

discovery on that issue. So too, does the Police Department's naked assertion that Sharp's claims for

declaratory and injunctive relief are moot fail to support summary judgment because Sharp is entitled to

discovery. Indeed, Judge Legg specifically held that Sharp is entitled to discovery on all of these topics.

Sharp has not been permitted to date to take that discovery because the Court set a schedule with Phase I

limited to efforts to identify the officers and related matters.

**1.      Summary Judgment Standard**

A motion for summary judgment should not be granted unless the movant can prove that "there

is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law." *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012) (citing

Fed. R. Civ. P. 56(a)). The party moving for summary judgment has the burden of proving that no

issues of genuine material fact remain. *Coleman v. Loudoun Cnty. Sch. Bd.*, 294 F. App'x 778, 780-81

(4th Cir. 2008). In evaluating the evidence, "'the nonmoving party's evidence is to be believed, and all

justifiable inferences are to be drawn in that party's favor.'" *News & Observer Publ'g Co. v. Raleigh-*

*Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552

(1999)).

### 2.    Statement of Facts in the Record.

For purposes of the Police Department's motion for summary judgment, all of Sharp's testimony

must be taken as true and all reasonable inferences from the evidence must be drawn in his favor. This

statement of facts is based on Sharp's testimony regarding the incident and testimony from Pimlico

security personnel. The Police Department has offered no contrary evidence.

Sharp has testified that after he observed and recorded his friend's forcible arrest, a uniformed

officer approached him and repeatedly directed him to surrender his cell phone. Dep. of Christopher

Sharp at 224:4-14, 225:11-15 (Aug. 27, 2012) ("2d Sharp Dep. Tr."). Sharp testified that he did not

want to surrender his phone as demanded by the BPD officer. *Id.* at 225:4-10, 225:17-21. But Sharp

found himself surrounded by other BPD officers who continued to demand that he surrender his phone

until Sharp felt intimidated and feared arrest if he did not comply. *Id.* at 228:9-14, 229:2-8. After

repeated confrontations with the "aggressive" BPD officers, Sharp became "afraid and worried" and

ultimately relinquished his phone to a BPD officer. *Id.* at 223:10-224:3, 224:10-225:21, 228:6-8, 228:5-

8, 229:2-8. Even after he surrendered his phone out of fear of arrest, Sharp was not permitted to leave

the immediate area and continued to be fearful of arrest while one of the officers left with his phone.

Dep. Tr. of Christopher Sharp at 34:1-18 (Apr. 24, 2012) ("1st Sharp Dep. Tr."); 2d Sharp Dep. Tr. at

221:7-12, 226:12-13, 230:8-9.  One of the officers preventing Sharp from leaving informed him of the officers' intentions for the phone, specifically to "erase it and give you your phone back."  2d Sharp Dep. Tr. at 238:6-8.  Sharp's phone was eventually returned with all "evidence" of the incident deleted, as well as all other videos on the phone—including videos of Sharp's family and other significant personal videos shot before that day.  *Id.* at 236:4-16, 292:16-20.

Sharp testified that all officers with whom he interacted wore blue police uniforms and identified themselves as police officers.  1st Sharp Dep. Tr. at 32:19-34:6; 2d Sharp Dep. Tr. at 139:7-9.  The Pimlico personnel in charge of security for the 2010 Preakness testified that the only security officers at the 2010 Preakness wearing blue police uniforms were BPD officers.  Dep. Tr. of Willie Coleman at 19:7-11 (Mar. 21, 2013) ("Coleman Dep. Tr."); Dep. of Robert Vinci at 14:8-19:18, 25:13-26:1 (Mar. 21, 2013) (describing uniforms of all Preakness security personnel; only BPD officers wore blue police uniforms).  As a result, the evidence compiled thus far shows that the officers who retaliated against Sharp were BPD officers.

### 3. The Facts are Sufficient to Support a Finding that BPD Officers Violated Sharp's Rights under the First, Fourth, and Fourteenth Amendments.

Each of the Police Department's arguments that the facts cannot support a finding that BPD officers violated Sharp's constitutional rights falls far short.  Indeed, the Police Department's arguments rely on unsupported assertions of purported "facts" and draw inferences in favor of the officers, which is contrary to the controlling summary judgment standard.

#### a. *Sharp Has Presented Sufficient Evidence that the Officers Who Violated His Rights Were BPD Officers Acting in Their Official Capacities, Which Is All the Evidence He Needs.*

The Police Department wrongly insists that it can have no liability as a matter of law for the wrongs alleged in Sharp's complaint simply because Sharp has not yet identified the officers involved

and the statute of limitations for personal-capacity claims against those officers may have passed. *See* Dkt. 91-1, Mem. of Law Supporting Mot. to Dismiss or for Summ. J. ("Def. Mem.") at 14-16 (July 2, 2013). The law does not permit such a leap in reasoning.

Claims may proceed against a government entity even when the claims are not viable against individual officers, so long as there has been no outright rejection of the constitutional claim on the merits. *See Int'l Ground Transp., Inc. v. Mayor & City Council*, 475 F.3d 214, 219-20 (4th Cir. 2007) (holding that because qualified immunity is a defense that extends only to individual defendants—and only on damages claims—a jury's finding of municipal liability was not inconsistent with the verdict for the individual officers); *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) (holding that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict"); *Moyle v. Anderson*, 571 F.3d 814, 818 (8th Cir. 2009) ("There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach."). That is, unless and until the court has definitively ruled that no constitutional violation occurred, a plaintiff may pursue a claim against supervisory employees or a governmental entity, even if he cannot identify the individual employees who committed the constitutional violation, or if individual liability of the officer defendants has been rejected only on immunity grounds that are inapplicable to the municipality or supervisory employees. Here, regardless of whether Sharp can identify the individual officers involved, it is possible to show that constitutional violations occurred that would render the Police Department liable for the resulting damages.

The Police Department erroneously relies on *Roberts v. Prince George's County*, 157 F. Supp. 2d 607, 608 (D. Md. 2001), and *Brown v. Prince George's County*, No. DKC07-2591, 2012 WL 3012573 (D. Md. July 20, 2012), in seeking to evade liability. *See* Def. Mem. at 14-15. In actuality,

however, the proposition that officer identification is a necessary component of municipal liability is not

supported by the district court's brief ruling in *Roberts*, nor by *Brown*.

In *Roberts*, the municipal liability claim was dismissed before—and for different reasons than—

the claims against the individual officer defendants. The municipal claims failed because the plaintiff

did not establish a policy or custom of police brutality of which the chief should have been aware.

Then, the claims against the individual officers were rejected for the separate reason that the plaintiff

was unable to identify which police officer assaulted him, and so could not sufficiently link either

officer to the assault. 157 F. Supp. 2d. at 609. Thus, *Roberts* does not hold, as the Police Department

wrongly argues, that individual officer identification or liability is a necessary component of municipal

liability. It does not even touch upon that issue.

In *Brown*, the court denied the municipality's motion for summary judgment, despite the

plaintiff's admission that he could not definitively identify the officers who attacked him, explaining:

"At its core, Defendants' argument is that Plaintiff must be able to identify the Defendant officers as his

attackers to proceed past summary judgment. There is, however, no support in the law for this bald

conclusion." 2012 WL 3012573, at *6. Although the Police Department tries to cast this decision as

some sort of narrow "exception" to a broader rule, it fails to elucidate any jurisprudential framework in

which *Brown* fits as a contrast. Instead, the Police Department is simply repeating the same "bald

conclusion" that did not succeed in obtaining summary judgment for the municipality in *Brown*.

Thus, the Police Department cannot evade liability on summary judgment unless it can establish,

based on undisputed facts, that the unidentified officers were not in fact BPD officers. The Police

Department does not meet this burden. At a minimum, a disputed issue of fact exists. Sharp's

testimony is uncontradicted that Officers Nos. 1, 2, and 3, and other officers involved in the incident,

wore blue police uniforms and identified themselves as police officers. 1st Sharp Tr. at 32:19-34:6; 2d

11

Sharp Dep. Tr. at 139:7-9. Pimlico's security representatives testified that the only uniformed officers present at the 2010 Preakness wearing uniforms such as those described by Sharp were, in fact, BPD officers. *E.g.*, Coleman Dep. Tr. at 19:7-11. Regardless of whether Sharp can identify the specific names of the officers, at a minimum, a genuine issue of material fact exists whether the officers involved in the incident were BPD officers. Therefore, the Police Department cannot demonstrate that it is entitled to summary judgment in its favor.

> **b.** **The Police Department's Arguments that the Evidence Is Insufficient to Support a Finding that the Officers Violated Sharp's Rights are Meritless.**

The Police Department makes a series of arguments based on the alleged good faith and reasonable conduct of BPD officers it claims it cannot identify. Each of these arguments requires an extraordinary leap from the evidence to extreme inferences in favor of the unidentified officers and against Sharp. The Court may not draw such inferences on summary judgment where, as here, a reasonable person could draw the contrary inference. In fact, Sharp's inferences from the evidence are not merely reasonable but far more likely than the Police Department's strained inferences.

According to the Police Department, Sharp cannot show a violation of his First Amendment rights because "the detention of Plaintiff and search and seizure of his phone was reasonable police activity under current Fourth Amendment jurisprudence," and because Sharp cannot show that "his alleged protected activity was the motivating factor for the actions of the unidentified police officers." *See* Def. Mem. at 17. Likewise, the Police Department argues that Sharp cannot show a violation of his Fourth Amendment or Fourteenth Amendment rights because he purportedly consented to the encounter and voluntarily released his phone. *Id.* at 17-18. The Police Department goes on to assert, in substance, that the officers acted reasonably in approaching Sharp because he was a witness who they reasonably believed had evidence of a crime, that they reasonably seized Sharp's cell phone to preserve evidence,

and that exigent circumstances precluded the officers from obtaining a warrant.  *Id*. at 16-18, 21-23.
While a naive jury might accept this fantasy-world version of Sharp's encounter with the officers, the
tale cannot support summary judgment.

First, Sharp's testimony confirms his allegations in the complaint, which Judge Legg held
resulted in a "factual dispute . . . as to whether Sharp voluntarily surrendered his cell phone or whether
he was coerced."  Dkt. 33 at 2.  Sharp testified that although a BPD officer told him that he needed to
surrender his phone, Sharp in fact "disagreed with him." 2d Sharp Dep. Tr. at 225:4-5.  When the
officer insisted to Sharp that "you have to, you have to give it to us," Sharp refused to consent, saying "I
don't think I do, it's my phone."  *Id*. at 225:8-10.  Sharp further testified in deposition that his state of
mind during the exchange was "I'm not going to give you my phone."  *Id*. at 228:1-3.  In fact, the
officers' approach resulted in Sharp's belief that "I should hold my phone as tight as I could because
[the officer] was being pretty aggressive." *Id*. at 228:6-10.  Finally, an officer threatened to confiscate
Sharp's phone if he did not give it to them, and threatened that by proceeding in this manner, "you'll get
it back in about a year or so."  *Id*. at 233:8-10.  A reasonable jury could infer from these facts that Sharp
did not voluntarily agree to be detained or surrender his cell phone, but rather was coerced on both
points.

Second, the Police Department's assertions that the officers acted reasonably in seizing Sharp's
cell phone to preserve evidence are not only unreasonable but also nonsensical under the circumstances
present here.  That the officers told Sharp they had approached him because he had "evidence" does not
mean that a jury must accept their statements as true.  Indeed, here the facts strongly suggest that those
statements were a pretext to obtain the cell phone so the officers could destroy its contents.  Sharp's
testimony certainly does not show, as the Police Department mischaracterizes it, *see* Def. Mem. at 18,
35, that the "only reason" officers approached Sharp was so they could review or preserve evidence.

Most notably in this regard, there is no proof whatsoever that the officers in fact preserved any evidence at all.  To the contrary, Sharp has testified that the officers seized his cell phone, deleted its entire video contents, and then returned it to him.  2d Sharp Dep. Tr. at 223:15-224:14; 225:4-226:3; 228:15-229:8, 230:1-9; 239:20-240:6.  After the officers had obtained possession of the cell phone, one of the officers told Sharp that the others most likely would delete the contents of the phone and return it to him, which is exactly what they did.  2d Sharp Dep. Tr. at 236:14-16 ("I kind of had a heads up from officer number 3 that . . . the videos would be erased because he told me that.").  There is no indication or allegation anywhere that the officers made any copy of the contents of the cell phone or otherwise preserved any evidence.  Rather, the obvious (and certainly permissible) inference from the facts is that the officers were not attempting to preserve evidence at all: *they were intentionally destroying evidence of their own misconduct and retaliating against Sharp for having filmed them.*

In sum, all of the Police Department's arguments regarding the encounter between the officers and Sharp depend upon accepting as true its assertions that the officers were acting in good faith to obtain and preserve evidence.  But the facts themselves permit the contrary inference that the officers were acting in bad faith for the purpose of destroying evidence and punishing Sharp for exercising his right to film them; indeed that is the far more reasonable inference from Sharp's uncontradicted testimony.  Accordingly, summary judgment is inappropriate.

     *c.*   *The Police Department's Motion for Summary Judgment as to the "Policy, Practice, or Custom" Element of Sharp's Claim and the Need for Injunctive and Declaratory Relief is Premature Because Sharp is Entitled to Relevant Discovery.*

The Police Department again argues—as in the first motion to dismiss—that after the filing of this lawsuit, it "instituted a policy" concerning video recording of police that moots Sharp's request for declaratory and injunctive relief.  *See* Def. Mem. at 2, 45.  As was the case the first time the Police

Department made this argument, discovery is appropriate regarding this policy.  *See* Dkt. 23, Decl. of Mary E. Borja filed with Response in Opp. to Mot. to Dismiss (Dec. 21, 2011), (identifying areas such as the training and communications concerning General Order J-16 and the policies, practices, and customs of BPD officers before and after the issuance of the order).

 In denying the Police Department's first motion to dismiss and for summary judgment, Judge Legg expressly recognized that Sharp is entitled to discovery regarding whether the Police Department has maintained an illegal "policy, practice, or custom" that resulted in the violations of Sharp's constitutional rights and whether the Police Department's alleged new policy and training program moots the need for declaratory and injunctive relief.  Indeed, Judge Legg identified the following specific categories of discovery that are "fair game":

(i)     The depositions of Sharp, Dudek, Chyzhova, the unnamed officers, and any bystanders or witnesses who were present during the incident at the 2010 Preakness;

(ii)    Whether the officer who erased the videos from Sharp's cell phone sought technical assistance;

(iii)   A deposition of the person primarily responsible for writing General Order J-16;

(iv)    The training program to inform officers regarding General Order J-16;

(v)     Information relating to the Scott Cover incident, which occurred at the Cross Street market in the early hours of Saturday, February 11th [almost 3 months after the new policy allegedly was implemented];

(vi)    Other alleged violations of General Order J-16 since it was adopted in November 2011;

(vii)   The unnamed officers' understanding of the Maryland Wiretap Act and any directives from the BPD regarding the Act's interpretation; and

(viii)  Pre-General Order J-16 BPD policies and directives of any kind related to video recordings by citizens of police activity.

Dkt. 33 at 3-4.  The "Scott Cover incident" involved a circumstance in which the Police Department

appears to have violated the right of a citizen to record police activity in public after the purported new

policy and training had been implemented.  *See* Ex. 1, Decl. of Mary E. Borja ("Borja Decl.") ¶ 8a.

Since Judge Legg's Order, and even without the benefit of formal discovery, Sharp has identified other

incidents likely to lead to admissible evidence that the Police Department's policy and training are

woefully deficient: a citizen who was assaulted after recording an officer in public in March 2012 and a

lawsuit alleging the arrest of a citizen who was recording officers in that same month.  *Id.* ¶ 8.

   Sharp has not yet had an opportunity to take discovery on any issues other than the identities of

the officers, including several categories of discovery listed by Judge Legg as appropriate.  On February

27, 2012, the parties agreed to a court-approved discovery plan under which Phase IA focused on

identifying the officers.  *See* Dkt. 34, Joint Discovery Plan and Scheduling Order (Feb. 27, 2012).

Consequently, initial discovery was limited solely to the identification of the unknown officers.  On July

11, 2012, Judge Legg ordered a transition to formal discovery, but limited the formal discovery to a Fed.

R. Civ. P. 30(b)(6) deposition concerning BPD's record-keeping procedures and a formal deposition of

Sharp.  See Dkt. 55, Letter Order Memorializing June 27, 2012, Teleconference (July 11, 2012).  Judge

Legg reiterated in a September 2012 order that the parties were in formal Phase I discovery, "the

purpose of which is to identify the three [BPD] officers identified as Unknown Officers 1, 2, and 3 in the

Complaint."  See Dkt. 71, Memo. to Counsel (Sept. 24, 2012).  Sharp has therefore not had an

opportunity to conduct discovery into any of the topics identified in the declaration accompanying this

opposition.  *See* Borja Decl. ¶¶ 6, 8, 10.  The Police Department cannot unilaterally moot Sharp's claims

by its self-serving and untested insistence that "there is no 'cognizable danger of recurrent violation.'"

Def. Mem. at 45 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).  In addition,

regardless of the new policy, nothing presented by the Police Department indicates whether BPD

officers continue to violate constitutional rights under an unofficial practice or custom notwithstanding the policy and any training conducted thereon.  Sharp must be allowed this discovery because unofficial practices may support Sharp's claim for relief even if the Police Department indeed has introduced contrary official policies and training.  Under these circumstances, the Police Department's motion for summary judgment as to the "policy, practice, or custom" element of *Monell* and regarding Sharp's request for declaratory and injunctive relief is premature and must be denied to permit discovery.

### d.    *The Police Department's Purported Legal Defenses Are Also Meritless.*

#### (1)    The Police Department Conflates Emotional Distress as a Cause of Action and Emotional Distress as a Basis for Damages.

The Police Department argues that the right to be free from emotional distress is not a constitutionally protected right, and thus Sharp's claims should be "dismissed."  *See* Def. Mem. at 43-45.  But Sharp has never argued that his emotional distress amounts to a constitutional injury.  Rather, Sharp alleges that he experienced and continues to experience emotional distress resulting from violations of his First, Fourth, and Fourteenth Amendment rights committed by BPD officers.  Compl., ¶¶ 64, 81, 90; 2d Sharp Dep. Tr. at 259:14-260:20, 267:4-5, 272:13-21, 273:8-20, 280:6-281:3. Damages have long been available and awarded for emotional distress in Section 1983 cases where government actions are "found . . . to have been violative of . . . constitutional rights and to have caused compensable injury," which is the case here.  *See Carey v. Piphus*, 435 U.S. 247, 255 (1978).  The Police Department is not entitled to summary judgment precluding any of the types of damages claimed by Sharp, including emotional distress damages, nor may it secure dismissal of any of his claims simply because the relief sought includes emotional distress damages.

(2)    The Police Department Fails to Show Why Sharp Cannot Pursue His
Fourteenth Amendment Claim.

The Police Department erroneously asserts that Sharp's due-process claim is barred because he

has post-deprivation remedies under Maryland law. *See* Def. Memo. at 41-43 (quoting, among others,

*Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).  But such a restriction applies only to "a tortious loss of

. . . property as a result of a random and unauthorized act by a state employee . . . not a result of some

established state procedure." *Parratt v. Taylor*, 451 U.S. 527, 541 (1981).  Yet the case before this Court

is not a case of a random or unauthorized act by a BPD officer, as in *Hudson* or *Parratt*, but rather the

"'established state procedure' that destroys his entitlement without according him proper procedural

safeguards." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 423 (1982); *see also Zinermon v. Burch*,

494 U.S. 113, 136-38 (1990) (holding that *Hudson* and *Parratt* did not control when the deprivation was

predictable, pre-deprivation process was possible, and the conduct was authorized by the state).  As a

result, Sharp may pursue his claim the Police Department violated his Fourteenth Amendment rights.

## III.
## CONCLUSION

The Police Department should never have filed this motion.  Judge Legg previously considered

and denied a motion to dismiss made on the same grounds.  As to summary judgment, the Police

Department's arguments to the effect that the only reasonable inference from Sharp's testimony is that

the officers were acting reasonably and in good faith in an effort to preserve evidence are, frankly,

preposterous; an officer seeking in good faith to preserve evidence does not destroy the evidence and

make no record of his actions in doing so.  Furthermore, the Police Department knows full well that

Sharp has not yet had an opportunity to take discovery that Judge Legg already determined he is entitled

to take regarding the "policy, practice, or custom" issue and the Department's unsupported assertion that

its purported new policy and training has mooted the need for declaratory and injunctive relief.

Respectfully submitted,

This 5th day of August, 2013

By: _____ /s/ _____

**Deborah A. Jeon** (#06905)
 jeon@aclu-md.org
American Civil Liberties Union of Maryland
3600 Clipper Mill Road
Suite 350
Baltimore, MD 21211
410-889-8555 (phone)
410-366-7838 (fax)

**Richard A. Simpson** (#14714)
 rsimpson@wileyrein.com
**Mary E. Borja** (Pro Hac Vice)
 mborja@wileyrein.com
**Craig Smith** (#17938)
 csmith@wileyrein.com
**Benjamin Kohr** (Pro Hac Vice)
 bkohr@wileyrein.com
Wiley Rein LLP
1776 K Street, NW
Washington, D.C. 20006
202-719-7000 (phone)
202-719-7049 (fax)

*Counsel for Plaintiff*
*Christopher Sharp*

### Certificate of Service

I certify that on August 5, 2013, I filed Christopher Sharp's Opposition to Defendants' Motion to Dismiss or for Summary Judgment, along with a proposed order, in accordance with the electronic-filing procedures adopted by this Court.

By: _____/s/_____
Craig Smith